May please the court Christopher Stockwell of Stockwell Law Firm representing the appellant Veronica Danielson in this case. At this time I'd like to reserve two minutes for rebuttal if I can. The government in the court below in this case advocate an impossibly high standard for avoiding summary judgment that most plaintiffs would never be able to reach on any fact pattern. In short the government in the court below would do away with trial by jury altogether in favor of trial by affidavit or the only fact finder on a plaintiff's factual claim is one individual judge. Would that be the case our community whose only role in our justice system is in the form of a jury has had its role usurped by the court itself and the diversity of experience that a jury with a cross section of socio-economic racial ethnic and gender backgrounds would be lost. The court below should not allow, the court below should not be allowed to hold itself out as lit against jury of peers when deciding on fact issues where a non-moving party fails to make sure that the material has been requested as it has been here. As this court's well aware summary judgment is not appropriate against the party unless there is no dispute of material facts and a non-moving party fails to make sure. Where are the disputed facts? The disputed facts are further. That are material. Yes. So. Might make a difference in the outcome. Absolutely. It's undisputed that by December 11th 2015 Danielson's manager Tran was aware of the grievance that was filed and resolved. Over her wages. Over her wages. That is in Tran's declaration. Okay. So beginning. Beginning in 2016 there is no less than 12 adverse employment actions that when aggravated could be found to be retaliation under the authority we cite in Thomas vs. County of Riverside. Indeed numerous times the government cites in their brief that these facts are disputed. Specifically on page 3 of the government's brief it admits that the foundational predicate fact about the underlying wage theft is in dispute. From the government's brief I quote the party's dispute whether Danielson was authorized to work overtime that day. And again on pages 7 and 8 where Danielson claims that she notified supervisor Don Jackson that she returned mail to the station. In contrast Jackson wrote a statement stating that Danielson never. So there was a period of time in January I think it was where she had requested to go to a shift that she was only required to work 8 hours. Correct. They couldn't force her to work overtime and she couldn't volunteer to work overtime. So it's a bit confusing. The first restriction she went on was a voluntary 8 hour restriction. Ultimately on January 20th 2016 she went on to the medically restricted 8 hour list. Right. So if she brought mail back to the post office at the end of her 8 hour shift she was required to notify. She was required to notify. However on numerous occasions And it was up to the post office to figure out what to do with that mail. That is correct. Numerous times during January, February and March after Tran knew that she was on the medically restricted 8 hour list. She would pack her mail up in the morning to go out on her route and she would ask for instruction about what to then do when she needed to bring the mail back to stay within her medical restriction. And typically the answer would either be calling to the office later and we will tell you what to do at that time. At which time the management team would typically ignore her call. How is all that an adverse action? So I'm glad you asked that question because the adverse action is simply that, well there's numerous adverse actions but the one that you're asking about. The one that you're asking about is that she's on a medically restricted 8 hour list. She is instructed to call the office later about what to do with the mail. The management team ignores her and in this case she has three choices. She can either continue to deliver the mail in which case she would be working beyond her medical restriction. Assuming the case where as numerous times happened she did not get a response from her superiors. She can either continue to deliver the mail on the clock exceeding her medical restriction which then makes her restriction look spurious. Or she can bring the mail back because they have not communicated with her and put herself at risk of discipline. Or she can work off the clock and again put herself in the situation where she may very well be disciplined. There's literally nothing that she can do to avoid discipline. Did her supervisor ever discipline her or write her up or counsel her for bringing mail back to the station when she was on that limitation? That is correct, yes. Well didn't they do that because she didn't tell anybody she brought back extra mail? That's a disputed fact. She told Supervisor Jackson. She says by affidavit in her deposition that she informed Jackson that she was bringing back the mail. She was already on the 8 hour list at that point and within that week she went on to the medically restricted 8 hour list because of the harassment that she was receiving up to that point. So she received the letter of warning at that point in late January. And that was by Mr. Nguyen. That was by Mr. Nguyen, correct. Is there any evidence that he even knew about the prior claim for? We have not had an opportunity. Or when she was on payment of the overtime amount? We have the statements of my client. We have the declaration and the deposition testimony of my client. And we haven't been able to examine in person any of the adverse parties. All we have is their declarations. So I haven't had an opportunity to depose them. They haven't had to sit for cross-examination. You didn't have discovery before the summary judgment motion was filed? We had discovery, but as is oftentimes the case with a plaintiff's attorney, the cost of depositions is a lot. Well, that's another issue. Well, no, but did you ask for continuance to respond to the motion for summary judgment based on discovery? I did not. So, again, back to the disputed facts, there is actually and I would like to talk more specifically to the retaliation angle. On March 11th, after again telling, so the pattern of retaliation goes to a situation where early in the week, Danielson would typically ask what to do to stay within her restriction. Her management team would typically say delay the third class mail. And on March 11th, she was told to delay the first class mail again, which... First class or third class? Or the third class mail again, at which point Tran knows that the mail will have to be delivered the next day. And on March 12th, she gets on the intercom to the entire Interbay station and says over the intercom, there will be no auxiliary assistance even for people, even for letter carriers that are on the medically restricted eight-hour list. To the best of our investigation and knowledge, there were no other people in that station that were on the medically restricted eight-hour list. So I'm not still understanding how that affected your client. She's being announced, she's being called out in front of a station where people know that she's on the medically restricted list, where it's pretty common knowledge that she'd been suffering this harassment from her supervisors. And her manager gets on the intercom and says, there's not going to be any auxiliary assistance for people on the medically restricted eight-hour list. And that is pointed directly at one person. That's pointed at Veronica Danielson. Your argument is that's going to deter somebody at the postal office from filing a wage claim? I mean, the argument is that in isolation, none of these things may very well add up to what we would typically call adverse action. But when you take a month's long pattern and campaign of retaliation towards a person, whereas you take these whole things into a mosaic and you say, what does this look like? It looks like a calculated pattern to harass and retaliate against this person because she exerted her protected right of saying, you guys took my wages. I think at the outset you said at the outset you said you wanted to wait, reserve two minutes. Thank you. Good morning. May it please the court. Sarah Moorhead here on behalf of Megan Brennan, the District Court correctly granted summary judgment because Danielson failed to establish the required elements of her prima facie case of retaliation. Except for a single letter of warning she received for violating a known workplace rule, Danielson did not suffer any adverse actions. It's undisputed that as to that letter of warning, the supervisor who issued it didn't even know that she had filed or complained in any way about her wages. Setting aside the letter of warning, the issues that Danielson complains about are the type of actions that the Burlington case has described as trivial. Plaintiff's counsel has just said that the issue with the intercom when Supervisor Tran made an announcement over the intercom, that was singling Danielson out. That's not supported by the record. She did not use her name in that announcement and there's no evidence in the record that other coworkers knew that Danielson was on the 8-hour list. Tran's declaration also states that there was another employee at that time who was on the 8-hour list. So that announcement in no way singled out Danielson. It applied to everyone and it was not an adverse action. Danielson cannot aggregate actions that are trivial in context into an adverse action. That principle is highlighted in the Burlington case and in the Supreme Court's other cases like Amtrak v. Morgan and Harris v. Forklift Systems, which explains the difference between a retaliation or discrimination case, Danielson is alleging retaliation, versus a hostile work environment case, which Danielson is not alleging. In Amtrak and Harris, the Supreme Court explained that a discrimination or retaliation claim involves discrete acts, whereas a hostile work environment claim involves a series of actions over time that by themselves may seem insignificant, but in concert may contribute to a hostile work environment. In contrast, in retaliation cases like this, courts look to each discrete act to determine if it was retaliatory or adverse. In briefing before the District Court, the plaintiff abandoned that claim before the District Court and before this court, but is now seeking to do an end run around that and try to use hostile work environment type analysis to establish a retaliation claim. The case law doesn't support that result. In analyzing her claims and to determine whether an adverse action occurred, it's important to look at the facts in context. For example, Danielson alleges that on one occasion, on December 29th, she requested 45 minutes of overtime, but was only granted 30 minutes of overtime. It's important to note that six other employees requested overtime on that day, and all of their requests were denied. So the fact that Danielson was granted 30 minutes of overtime when no one else was granted overtime is not an adverse action. Similarly, on the days that she claimed she was denied auxiliary assistance, she doesn't allege any adverse consequences to herself. Post office's responsibility to take care of that mail, correct? That's exactly right. She knew that she could return the mail, any undelivered mail, at the end of the day to the Postal Service, and then it became the Postal Service's responsibility. Her only duty was to alert them that she was bringing back mail. That's exactly right. She just had to notify the supervisor that she had done so, and the reasons for that, so they would know what was coming back and why, so they could determine the best way to handle that situation. In addition, as set forth in the other evidence in the record, all employees sometimes received less overtime than they requested or less auxiliary assistance than they requested. That happened to Danielson both before and after her complaint. It happened to other employees, too. It was simply not an adverse action. It's also important to consider the context of the allegations that she alleges about the staring, for example, because the allegations in her brief don't always match the evidence in the record. In her brief, she describes the staring as menacing and intimidating, but her own report describes it more, as Supervisor Tran describes it, as common everyday workplace monitoring of an employee's work, as Tran was required to do. Danielson also complains that Tran's behavior drastically changed towards her on November 28th, but that allegation actually undermines her allegations, because even under Danielson's version of the facts, the earliest date that any supervisor was aware of her wage complaint was November 30th. In sum, there's no evidence of an adverse action other than the letter of warning. There's no evidence of any causal connection between her wage complaint and any adverse action, and there's no evidence of pretext whatsoever. The employer has set forth legitimate non-retaliatory reasons for all actions taken, and Danielson did not come back with any evidence of pretext. So if the Court has no further questions, I'll conclude my presentation and ask that this Court affirm the grant of summary judgment to the government. Thank you. Thank you, Your Honor. Ms. Moorhead referenced the March 11th, the March 11th intercom announcement, and saying that there was another person in the interbase station on the eight-hour list. To our knowledge, there's two different lists. There's a voluntary eight-hour list, and there's a medically-restricted eight-hour list. They're two different things. To our knowledge, Veronica Danielson is the only one on the medically-restricted list in that station on that day, and the announcement was essentially, I'm paraphrasing, there will be no auxiliary assistance for those on the medically-restricted, on the eight-hour medically-restricted list. As far as, you know, behavior changing towards Danielson on November 28th undermining our claim is not accurate, because if you're asking your boss, who knows that she has, you know, it's undisputed that those wages were taken, and if you're asking about your wages on November 28th, even if that has not activated the retaliation clause of the claim yet, the manager knows that you're asking about your wages. If you come in, you ask about your wages, and she has taken your wages a week or two or whatever it was beforehand, she has a pretty good idea of what you're asking about. As far as, I want to real quickly touch on the gravity of the fact claims and how the court below... I'm sorry, the claims in this case were more egregious, more significant economically to Veronica Danielson. She carried the mail overtime regularly for nearly 20 years, and she went on the medically-restricted eight-hour list. She lost much more than $9,000 that was cited in Thomas. Thank you. Thank you. This concludes the argument on the Danielson case, and it shall be submitted. To the next case on our docket. I thank counsel for their arguments.
judges: Gould, Paez, Jack